IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No. 1:17-cv-20287-MARTINEZ-GOODMAN

JOHN A. OLAGUES and
RAY WOLLNEY,

    Plaintiffs,

vs.

M.D. PHILLIP FROST and
OPKO HEALTH, INC.,

    Defendants.

## MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW

Pursuant to Rule 12(b)(6), Fed. R. Civ. P., defendant Dr. Phillip Frost ("Dr. Frost") requests dismissal of plaintiffs' Complaint. As demonstrated herein, plaintiffs cannot state a claim for relief against Dr. Frost under Section 16(b) of the Securities Exchange Act of 1934, 15 USC §78p(b) (hereinafter "Section 16(b)"), because the challenged transactions fit squarely within the exemption provided by SEC-promulgated Rule 16b-3(e), 17 C.F.R. § 240.16b-3(e).

PRELIMINARY STATEMENT

This is a purported derivative action pursuant to Section 16(b) seeking short-swing profits allegedly earned by Dr. Frost on supposed purchases and sales of the common stock of nominal defendant OPKO Health, Inc. ("OPKO"). In reality, this is a "strike" suit against one of the philanthropic pillars[1] of the South Florida community instigated and brought by professional,

---

[1] Pursuant to Rule 201(b)(2), Fed. R. Evid., the Court can take judicial notice that Dr. Frost and his wife have endowed the University of Miami's School of Music; made a recent $100 million gift to the University of Miami creating the Frost Institute for Science and Engineering; and contributed $45 million to Miami-Dade's new Patricia & Phillip Frost Museum of Science.

serial Section 16(b) plaintiffs, John A. Olagues and Ray Wollney.[2] It is a case study in the "danger of [securities litigation] vexatiousness." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 739 (1975). Even though "by objective standards [plaintiffs' claim] may have very little chance of success at trial [it] has a settlement value to the plaintiff out of any proportion to its prospect of success at trial so long as he may prevent the suit from being resolved against him by dismissal or summary judgment" *Id.* at 740. To obviate this "vexatious litigation" danger and in order to avoid the unnecessary consumption of scarce judicial resources, the Court should dismiss this case with prejudice at this early juncture because the challenged transactions were fully approved in advance by OPKO's Board of Directors and, thus, are exempt under SEC-promulgated Rule 16b-3(e).

---

[2] Olagues has filed similar lawsuits against Carl Icahn (2d Cir. Case Nos. 16-1255, 16-1259 and 16-1261); Robert Lawler (W.D. Okla. Case No. 5:16-CV-01391); and Susan Decker (N.D. Cal. Case No. 5:07-CV-02686). Olagues has also apparently sued JP Morgan Chase CEO James Dimon (S.D.N.Y. Case No. 1:14-CV-04872); the Marin District Attorney (N.D. Cal. Case No. 4:14-CV-00818); Terry Semel (the former CEO of Yahoo) (9th Cir. Case No. 07-15202); and Arnold Schwarzenegger (E.D. Cal. Case No. 2:07-CV-01182). Both Wollney and Olagues have filed lawsuits against Jerome Peribere et al. (W.D.N.C. Case No. 3:17-CV-00068); Michael Krimbill, et al. (N.D. Okla. Case No. 4:16-CV-00748); Perceptive Advisers LLC et al. (S.D.N.Y. Case No. 1:15-CV-01190); and Michael Elich, et al. (W.D. Wash. Case No. 3:16-CV-05924).

## BACKGROUND FACTS[3]

The Parties

Plaintiffs claim to be stockholders of OPKO (Compl.¶4). According to plaintiffs, OPKO is a corporation whose stock trades on the NYSE exchange[4], and Dr. Frost is an officer, the CEO and Chairman of OPKO (*Id.* ¶¶ 3-5).

The Challenged Transactions

Plaintiffs base their Section 16(b) claim on Dr. Frost's surrender of OPKO stock to OPKO in order to satisfy his obligation to pay the exercise price of certain warrants upon the exercise of each warrant on January 31, 2015. (*Id.* ¶¶ 9-11). According to the Complaint, the "matching" of this surrender of OPKO stock on January 31, 2015 with alleged purchases of OPKO stock between September 23 and October 6, 2014, were "dispositions" yielding alleged "profits" of $3,190,254. (*Id.* ¶ 9). These "dispositions," the Complaint asserts, occurred within

---

[3] When deciding a motion to dismiss a federal securities law claim, courts "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Thus, in analyzing a motion to dismiss a federal securities law claim, "'a court may consider the contents of relevant public disclosure documents which (1) are required to be filed with the SEC and (2) are actually filed with the SEC.'" *Malin v. Ivax Corp.*, 17 F. Supp. 2d 1345 (S.D. Fla. 1998) (quoting *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996)); *see also FindWhat Investor Group v. Findwhat.com*, 658 F.3d 1282, 1297 n.15 (11th Cir. 2011) ("We are permitted to review the Defendants' SEC filings ourselves in evaluating the sufficiency of the Plaintiffs' allegations"). The 11th Circuit also recognizes an exception in cases where a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its dismissal motion. *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir.1999). Here, plaintiffs attached SEC-filed Form 4s to the complaint, and reference the specifics of their pre-suit demand and OPKO's response in paragraphs 13-14 of the Complaint. Thus, consideration of all these materials at the motion to dismiss stage is appropriate and warranted.

[4] OPKO's stock actually trades on the NASDAQ exchange; however, that fact is not material to the disposition of this motion to dismiss.

six months of each other and thus were short-swing profits within the meaning of Section 16(b) that must be disgorged by Dr. Frost to OPKO. (*Id.* ¶¶ 9-10, 16-17).

Shareholder Demand

Plaintiffs requested, by letter dated September 26, 2016, that within sixty days OPKO demand "recovery of the $3,190,254 of total profits from Dr. Frost, or if necessary sue for disgorgement of these profits" under Section 16(b). A copy of this letter, which is referred to in paragraph 13 of the Complaint, is attached hereto as Exhibit A. OPKO responded by a letter, dated November 17, 2016, which explained why OPKO concluded the subject transactions were "exempt from Section 16(b) by virtue of compliance with [SEC promulgated] Rule 16b-3(e)." According to OPKO's response, it saw "no basis in law or regulation that gives the Company, or any shareholder, any colorable claim to seek recovery of any amounts related" to the transactions now the subject of this lawsuit. A copy of OPKO's letter, which is referenced in paragraphs 13 and 14 of the Complaint, is attached hereto as Exhibit B.

ARGUMENT

Section 16(b) requires publicly traded company insiders[5] to return any profits made from the purchase and sale of company stock if both transactions occur within a six-month period. However, Congress in enacting this statutory provision empowered the SEC to promulgate rules and regulations exempting transactions not comprehended to be within the statute's purpose.

Rule 16b-3(e) was promulgated by the SEC as authorized by Section 16(b). The Rule provides:

> Any transaction, other than a Discretionary Transaction, involving the disposition to the issuer of issuer equity securities, whether or not intended for a compensatory or other particular purpose, shall be exempt, provided that the terms of such disposition are

---

[5] There is no dispute Dr. Frost is a company insider within the meaning of Section 16(b).

>approved in advance in the manner prescribed by either paragraph (d)(1) or paragraph (d)(2) of this section.

17 C.F.R. § 240.16b-3(e).  Sub-paragraph (d)(1) exempts transactions that are "approved by the board of directors of the issuer …." 17 C.F.R. § 240.16b-3(d)(1).

According to paragraphs 9 and 10 of the Complaint, the "dispositions" in issue here consisted entirely of the surrender to OPKO of 906,146 shares of OPKO stock by Dr. Frost in order to satisfy the obligation to pay the exercise price of certain warrants. However, as paragraph 14 of the Complaint acknowledges and as OPKO's response to plaintiffs' pre-suit demand letter explained (Exhibit B hereto), OPKO's Board of Directors (the "Board") adopted resolutions approving the issuance of those warrants, which contain specific provisions related to the net exercise of the warrants. The resolutions approving the issuance of the warrants were approved by the Board well in advance of the subject transactions.  For these reasons, the subject transactions are exempt from Section 16(b), and Dr. Frost has no statutory liability.

To try to get around the admitted fact that Dr. Frost merely surrendered OPKO shares to satisfy the exercise price for previously granted warrants issued pursuant to prior Board resolutions, plaintiffs complain that the warrants "were exercised 2 years prior to their expiration at the sole discretion of Dr. Frost." (Compl. ¶ 10).  According to plaintiffs, this discretion, coupled with the fact that OPKO was required to accept the warrant exercises, rendered the subject transactions "comprehended within the purpose" of Section 16(b) "and cannot be made exempt from [S]ection 16(b) even by approval via 16 b-3(e)." (*Id.*).

This argument finds no support in the plain language of Rule 16b-3(e), subsequent SEC interpretation, case law or the commentators.  Indeed, in its 1996 adopting release for Rule 16b-3(e) (Release No. 34-37260), the SEC stated that "[a] note has been added to the new rule to clarify that if the terms of a subsequent transaction are provided for in the  transaction as initially

approved, the subsequent transaction does not require further specific approval."[6] The securities-specific treatises are in accord. Arnold S. Jacobs is illustrative. In describing Note 3, Jacobs' treatise states that "when the terms of the award as approved provide for a subsequent participant-directed election (in this case, the Insider paying the applicable exercise price in stock rather than cash), that election is exempt without further condition if effected pursuant to those terms." Arnold S. Jacobs, SECTION 16 OF THE SECURITIES EXCHANGE ACT, 3-465, § 3.75 (July 2002).

The authorities are uniformly clear: dispositions of stock to an issuer to pay the exercise price of a warrant or option are exempt from Section 16(b) if the relevant terms are approved in advance. That is the case here; thus, there is no liability.

## CONCLUSION

For the foregoing reasons, the Complaint against Dr. Frost should be dismissed with prejudice in its entirety.

Dated:  April 28, 2017.                              Respectfully submitted:

**HOMER BONNER JACOBS**
*Attorneys for Dr. Phillip Frost*
1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida  33131
Phone:  (305) 350-5139
Fax:  (305) 982-0063

By:  /s/ Peter W. Homer
         Peter W. Homer
         Email:  phomer@homerbonner.com
         Florida Bar No: 291250

---

[6] Note 3 to Rule 16b-3 in relevant part states: "Where the terms of a subsequent transaction (such as the exercise price of an option, or the provision of an exercise or tax withholding right) are provided for in a transaction as initially approved pursuant to paragraphs (d)(1), (d)(2) or (e), such subsequent transaction shall not require further specific approval."

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 28, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Kevin C. Schoenberger
201 St. Charles Avenue
Suite 2422
New Orleans, LA 70170
Email: kcschoenberger@gmail.com

*Attorney for Plaintiffs*

W. Conrad Willkomm
Law Office of Conrad Willkomm
3201 Tamiami Trail
Second Floor
Naples, FL 34103
Email: conrad@swfloridalaw.com

*Attorney for Plaintiffs*

Tracy A. Nichols
Holland & Knight, LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Phone: (305) 789-7717
Fax: (305) 789-7799
Email: tracy.nichols@hklaw.com

*Attorney for Opko Health, Inc.*

/s/ Peter W. Homer
Peter W. Homer